STATE v. JAMES C. SIMONS.

*Indictment.    Criminal law.    Subornation of perjury.    Bastardy.*

An indictment for perjury or subornation of perjury, must distinctly show that the false testimony was given in a judicial proceeding.

In a prosecution for bastardy, under the statute — Comp. Stat. chapter 71, p. 423 — it is indispensable that the complaint made by the woman, charging the cause of her pregnancy upon the respondent, be *in writing*.

Therefore, an indictment for suborning a woman to commit perjury in making such a complaint, which does not allege that the complaint was in writing, is bad, and will be so held on motion in arrest.

INDICTMENT for subornation of perjury.   Plea, not guilty, and trial by jury, at the March Term, 1858,—BARRETT, J., presiding.

The portion of the indictment material to the question at issue in the supreme court, was as follows:

" That James C. Simons, of Montpelier, in the county of Washington, aforesaid, on the twenty-fourth day of April, in the year of our Lord, one thousand eight hundred and fifty-seven, at Barre, in said county, being a wicked and evil disposed person, minding and intending great injury to one Alanson M. Clark, a good and valuable citizen of this state, and unjustly to cause and procure him, the

said Alanson M. Clark, to be put to great charge and expense of his moneys, and to force him to give security for the maintenance of a child, of which one Mary Smith, a single woman, was, on the day and year last aforesaid, pregnant, and which said child, by the laws of this state, was likely to become a bastard, did on the same day and year last aforesaid, at Barre, aforesaid, and within the jurisdiction of this court, unlawfully and wickedly solicit, instigate and as much as in him lay, endeavor to persuade the said Mary Smith to go before Carlos Carpenter, then and there, on said 24th of April, 1857, being a justice of the peace within and for the said county of Washington, and then and there to take her corporal oath, and swear before the said Carlos Carpenter, justice of the peace, as aforesaid, the said justice then and there, on said 24th day of April, 1857, having sufficient and competent authority to administer the said oath to the said Mary Smith, in that behalf, among other things in substance and to the effect following, that is to say, that she, the said Mary Smith, was with child, and that on, or about the 14th day of September, 1856, at St. Albans, in the county of Franklin, the said Alanson M. Clark did beget the said child upon the body of her, the said Mary Smith, and is the father of said child, which said child, when born, would, unless prevented by a prior marriage, be a bastard; and the said Mary Smith did accordingly, and in pursuance of the solicitation and instigation and persuasion of the said James C. Simons, on said 24th day of April, 1856, go before the said Carlos Carpenter, justice as aforesaid, and did then and there, at Barre, aforesaid, take her corporal oath, and swear before the said Carlos Carpenter, justice, as aforesaid, he, the said Carlos Carpenter, then and there, at Barre, aforesaid, having sufficient and competent power and authority to administer the said oath to the said Mary Smith in that behalf, among other things, in substance and to the effect following, that is to say, that she, the said Mary Smith, was with child, and that on or about the 14th day of September, 1857, at St. Albans, aforesaid, one Alanson M. Clark did beget said child upon the body of her, the said Mary Smith, and that the said Alanson M. Clark was the father of said child, which said child when born, would, unless prevented by a prior marriage, be a bastard, etc., etc."

The jury rendered a verdict of guilty. The respondent moved

in arrest of judgment on account of the insufficiency of the indictment. But the court overruled this motion, to which ruling the respondent excepted.

*F. V. Randall*, for the respondent.

*C. H. Joyce*, State's Attorney, for the prosecution.

The opinion of the court was delivered by

POLAND, J. This case comes before the court upon various exceptions taken by the respondent upon the trial, and also to the sufficiency of the indictment upon a motion in arrest of judgment.

The principal objection that is made to the sufficiency of the indictment, is, that it does not allege enough to show that the false testimony, which the respondent induced and procured the said Mary Smith to give, was in a proper judicial proceeding.

Perjury is defined to be the taking of a wilful false oath by one, who, being lawfully sworn by a competent court to depose the truth in any judicial proceeding, swears absoluetly and falsely in a matter material to the point in question, and all the books and cases agree, that to render an indictment for perjury or subornation of perjury sufficient, it must clearly and distinctly show that the false testimony was given in a judicial proceeding.

Prior to the statute of 23, Geo. 2d., it was deemed necessary, and was the practice in the English courts, in indictments for perjury, to set forth at length the full record of the proceeding or cause, in which the false oath was taken, but by that statute, it was only made necessary to set forth the *substance* of the proceedings, and of the offence charged.

But under that statute, it has been held that the necessity for showing distinctly that the false oath was taken in a judicial proceeding, is not dispensed with. See *Rex* v. *Overton*, 4 Q. B. 83; 45 E. C. Law, 83. Sec. 6, of chap. 106, of our Comp. Stat. is substantially copied from the English statute, and was not intended, as we think, to allow any greater liberality in indictments for perjury or subornation of perjury, than is allowed under the English statute, by the English courts.

The respondent in the present case, it is claimed, suborned Mary

State *v.* Simons.

Smith to commit the crime of perjury in a prosecution for bastardy, under the provisions of the statutes of this state upon that subject.

Does the indictment state clearly and distinctly, all those facts which must exist in order to constitute a legal proceeding or prosecution under that statute, and a *judicial proceeding* in which the crime of perjury could be committed?

In this state, the proceedings for the purpose of compelling the father of an illigitimate child to aid in its support and maintenance, are wholly a creation of the statute, and in order to make them legal, they must be in substantial conformity with its provisions.

The statute provision for the commencement of such proceedings, is as follows : " When any single woman shall be delivered of a bastard child, or shall declare herself to be with child, and that such child, if born alive, will be a bastard, and shall, in either case, charge any person *in writing and under oath,* before any justice of the same county with having gotten her with child, and being the father of such child, such justice shall issue his warrant, etc., etc." ; sec. 1, chap. 71, Comp. Stat. p. 423. Now it is apparent, as we think, that the first step, and an indespensable one to the commencement of any regular judicial proceeding under that statute, is a complaint or charge in writing, upon the oath of the woman making it, and that any proceeding which should be wanting in this requisite, and be wholly *in parol,* would be wholly void as a legal foundation for any subsequent proceedings thereon.

The substance of all that is alleged in this indictment, is that the respondent induced and procured Mary Smith to go before justice Carpenter, and swear that Clark was the father of the bastard child of which she was then pregnant. It is not stated in any manner, even by inference, that any complaint or charge in writing, had been, or was made to the justice, or that the facts she testified to, were to be embodied in any charge or complaint, or were intended to be, or to lay a foundation for the commencement of a prosecution against Clark. The only statements in the indictment from which any inference could be drawn that this false testimony was in a proper charge or complaint for bastardy, are, that it is alleged that the object and purpose of the respondent in procuring the woman to give this false testimony, was to put Clark to the expense, and compel him to give security for the maintenance of

the child, and that Justice Carpenter had lawful authority to administer the oath to the said Mary Smith.

The inference that the proceedings were regular and legal, can hardly be drawn from an allegation that the respondent's intent and purpose in the subornation was to produce a result that could only be arrived at by having a regular and legal proceeding under the statute. It is altogether too remote and consequential an inference to be allowed under the strict rules of criminal pleading. Nor can the regularity of the proceedings be inferred from the allegation that Justice Carpenter had lawful authority to administer the oath, for this is but the averment of a legal inference, and not of a distinct fact, and if such an allegation could be made available at all, in aid of a defective statement of the cause or proceeding in which the perjury was committed, we do not see why it might not dispense altogether with any statement at all. All that is clearly and distinctly alleged in this indictment, may be true and still there may have been no charge, or complaint in writing, made to Justice Carpenter by Mary Smith, and her testimony before him not in any proceeding designed to make Clark chargeable for the maintenance of her bastard child, under the provisions of the statute.

The English statute against bastardy, 6 Geo. 2d. chapter 31, is much like ours. It provides that " If any single woman shall be delivered of a bastard child, or shall declare herself to be with child, etc., and shall in either of such cases, in an examination to be taken in writing, upon oath, before one justice of the county, etc., charge any person with having gotten her with child, such justice shall issue his warrant, etc."

In all the English forms of indictments for perjury or subornation of perjury, in such examinations before a justice of the peace, the examination itself is set forth at length in the indictment, though that would doubtless now be held to be unnecessary, and it would be sufficient to state the making of the charge, and the substance of the proceedings, and of her examination.

The indictment in the present case appears to have been copied from a form given by Mr. Wharton, in his Precedents of Indictments, etc., page 321, and Mr. Wharton adds in a note, that this indictment was found and sustained in Philadelphia Quarter Sessions, in 1801. I have looked into the Pennsylvania Statutes to

find what were their provisions upon the subject of bastardy, and the only statute in force in 1801, making any provision to compel aid or support by the fathers of bastard children, is contained in an act passed as early as 1705. The 3d sec. of that act is as follows: "That any single or unmarried woman having a child born of her body, the same shall be sufficient proof to convict such single or unmarried woman of fornication, and the man, by such woman charged to be the father of such child, shall be the reputed father, and she persisting in the said charge, in the time of her extremity of labor, or afterwards in open court, upon the trial of such person so charged, the same shall be given in evidence, in order to convict such person of fornication."

The 8th sec. of the same act is as follows: "That every person being legally convicted to be the reputed father of a bastard child, shall give security to the court, town or place where such child was born, to perform such order for the maintenance of such child, as the justices of the peace in their sessions, shall direct and appoint."

These two sections contain all the statutory provisions upon that subject, so far as I have been able to discover, and it will be noticed that nothing is provided as to the form of proceeding, or how a prosecution shall be commenced, or whether the charge is to be made in writing, or even to be made to a magistrate, or before any authority whatever.

What was the actual course of proceeding in that state, in such cases, we have no means of ascertaining.

It is quite apparent, however, that the precedent in Wharton might be entirely sufficient under the Pennsylvania Statute, and totally insufficient under own own, and this case pretty well illustrates the danger of using precedents drawn to meet the provisions of statutes of other states, unknown to us, and unlike our own.

A reference to a few authorities upon this subject, we think will be quite sufficient to establish the insufficiency of this indictment.

*Regina* v. *Pearson*, 8 C. & P. 119; 34 Eng. Com. Law 321. The defendant was indicted for perjury committed, before two justices of the peace. The indictment stated that the defendant, intending to subject W. M. to the penalties of larceny, went before the two magistrates, and did depose and swear that the said W. M. had put his hand into the defendant's pocket and taken out a five

pound note, assigning perjury upon this deposition. It was decided that this indictment was fatally defective, as it did not show that any charge of felony had been previously made, or that the defendant then made any charge of felony, or that any judicial proceeding was then pending before said magistrates.

*Regina* v. *Bishop*, 1 Carr & Marsh 302; 41 E. C. L. 169. The defendant was indicted for perjury, in an affidavit under an interpleader rule. The indictment set out the circumstances of the previous trial, the verdict, judgment, writ of *fieri facias*, the levy, notice by the prisoner to the sheriff not to sell, and the prisoner's affidavit that the goods were his property, but omitted to state that any rule was obtained according to the provisions of the interpleader act, it was held that the indictment was bad, as the affidavit did not appear to have been made in a judicial proceeding.

In *Stimson* v. *State*, 6 Yerger Tenn. 581, it was held that in an indictment for perjury, an omission to charge in the bill of indictment that the matter of traverse tried between the state and D. touching which the defendant gave his evidence, was by indictment, or presentment, was fatal.

So in the same state, where the defendant was indicted for perjury in falsely swearing to a plea of *non est factum* (which by statute is required to be in writing, and signed by the party who pleads it), and the indictment omitted to allege that the plea was in writing, and signed by the party, it was held to be fatally defective; *State* v. *Steele*, 1 Yerger 394.

In *State* v. *Gallimore*, 2 Iredell N. C. 374, the defendant was indicted for perjury alleged to have been committed, upon the trial of an indictment, against Benjamin Erwin. The indictment alleged that at a court of pleas and quarter sessions, held, etc., before John Stile, Jr. etc., esquires, justices, qualified by law to hold the said court, a certain issue in due manner joined in said court, between the state of North Carolina and one Benjamin Erwin, upon a certain indictment depending against the said Benjamin Erwin, for assaulting and beating one Michael Holbrook, and for making an affray, came on to be tried by a jury of the county, in due manner sworn and taken for that purpose, and that upon the trial of that issue, the defendant was produced and sworn as a witness, and testified on behalf of the state, and proceeded to allege the material-

State *v*. Simons.

ity and falsity of his testimony, in due form. This indictment was held insufficient, because it did not properly allege that the false testimony was given in a judicial proceeding, before a court having jurisdiction thereof. GASTON, J., who gave the opinion, said, "It is a general rule that every indictment should charge explicitly all the facts and circumstances which constitute the crime, so that on the face of the indictment the court can with certainty see that the indictors have proceeded upon sufficient premises, and afterwards, when these facts and circumstances are confessed, or found to be true, can behold upon the record an undoubted warrant for awarding the judgment of the law,"

Other authorities to the same purport, might be quoted to an almost indefinite extent, but these are deemed sufficient to justify the conclusion, that this indictment is fatally defective in not properly alleging the pendency of any such judicial proceeding, in which the alleged false testimony was given, as to constitute the crime of perjury. This view of the case will render any examination of the other exceptions taken on the trial, unnecessary. It would seem from the facts stated in the exceptions, and the finding of the jury, that the respondent has been guilty of a most flagrant and detestable crime, and if the result of our conclusions furnished any bar to another prosecution for it, we should regret the necessity which brings us to it, much more than we now do.

The respondent's exceptions are sustained, and the judgment ordered to be arrested, for the insufficiency of the indictment,